## Raymond R. Chappell and Joann C. Chappell v. Northern Realty, Inc., Hickok and Boardman, Inc., Harold Bensen and Nancy Lang

[266 A.2d 453]

No. 11-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 2, 1970

*John H. Jackson,* Burlington, for Plaintiffs.

*Black, Wilson, Curtis & Bryan,* Burlington, for Defendant, Northern Realty, Inc.

**Shangraw, J.** This is an action in contract and was tried by the court without a jury. Findings of fact were filed. This was followed by a judgment order in favor of the plaintiff to recover of the defendant, Northern Realty, Inc., damages of $2,179.40 together with interest and costs. This defendant has appealed from the judgment. Defendants Hickok and Board-

man, Inc., Harold Bensen and Nancy Lang were not held liable.

Early in January, 1965, the plaintiffs entered into a contract to purchase from the defendant, Northern Realty, Inc., a house located on lot 7, Juniper Ridge, Shelburne, Vermont. Plaintiffs obtained possession of the premises prior to the closing which took place in the office of the attorney for Northern Realty, Inc. on January 14, 1965. The house had been used as a model prior to the agreement to purchase.

At all times material the defendant, Hickok and Boardman was acting as the exclusive real estate agent for Northern Realty, Inc., in this transaction. Defendants Harold Bensen and Nancy Lang were real estate brokers working for Hickok and Boardman, Inc., on a commission basis.

The premises in question were sold to the plaintiffs primarily through the efforts of Nancy Lang. The agreement and contract was endorsed by Harold Bensen.

At or about the time the agreement to purchase was executed plaintiffs inspected the premises in the company of Mrs. Lang. Plaintiffs noted certain problems in connection with the construction and equipment in the house. At that time, and at the request of the plaintiffs, Mrs. Lang made lists of those items which needed attention. These were introduced in evidence as Plaintiffs' Exhibits Nos. 9 and 10. At that time plaintiffs were advised by Mrs. Lang that the items so indicated would be rectified by the seller.

At the time of closing on January 14, 1965, the plaintiffs were present together with Nancy Lang, Harold Bensen, an attorney representing the Northern Realty, Inc., and a loan officer representing a bank. At this time the plaintiffs again pointed out the repairs and items to be corrected.

In connection with the discussion with respect to repairs and matters to be rectified, it was suggested that an escrow account be established and a portion of the sale price withheld until such time as the agreement to repair had been completed. Mr. Bensen suggested that C. Douglas Cairns, President of Northern Realty, Inc., was a responsible businessman and would see that the necessary work would be done. It was finally agreed that there would be no funds withheld in escrow for this purpose.

At the further suggestion of Mr. Bensen, Nancy Lang again compiled a list of those items to be repaired or replaced. Relying upon those representations, the plaintiffs agreed to and did consummate the purchase by accepting a warranty deed from Northern Realty, Inc., and executed a first and second mortgage on the premises.

Subsequent to the date of the closing plaintiffs received from Mrs. Lang a typewritten list (Pl. Ex. 11) detailing the items which had been on the original lists, together with certain additional items.

From time to time, subsequent to the date of closing and the receipt of the typewritten list, the plaintiffs contacted Mr. Bensen, Mrs. Lang and Mr. Cairns with respect to the items contained on the three lists, and other items which were not readily apparent at the time of the closing.

As a result of these communications certain of the items contained in the lists were in fact repaired and replaced. At least one item was repaired at the direction of Mr. Bensen while acting for Hickok and Boardman, Inc., which was paid for by this agency. Other items were repaired or replaced by or at the request of Northern Realty, Inc., and paid for by it. Some items were not repaired by either the seller, or Hickok and Boardman, Inc., and these were repaired and rectified by the plaintiffs.

One of the defects in the premises involved the seeding and landscaping of the lawn around the house. This complaint was communicated to the seller. On at least two occasions the plaintiffs were told by the seller that workmen would come at a specific time and date to rectify the situation. This was not done and ultimately Mrs. Chappell was told by Mr. Cairns that nothing further would be done by Northern Realty, Inc., in connection with the premises. All complaints made to Hickok and Boardman, Inc., were communicated to the seller.

In our treatment of the contentions of the defendant, Northern Realty, Inc., we first call attention to the following findings of fact.

9. At the time of the inspection Plaintiffs noted certain problems in connection with the construction and equipment in the house.

10. At that time at the request of the Plaintiffs Nancy Lang made a list of those items which were at that time apparent to the plaintiffs.

11. This list is in evidence as Plaintiffs' Exhibits Nos. 9 and 10. At that time Plaintiffs were advised that the items on the list would be rectified by the seller.

26. The Defendant, Northern Realty, Inc. agreed to repair or replace the items contained in Plaintiffs' Exhibits 9, 10 and 11 as an inducement to the Plaintiffs to consummate the purchase of the premises and not insist on an escrow agreement.

27. The consideration for the Defendant, Northern Realty, Inc.'s agreement to repair or replace those items contained in Plaintiffs' Exhibits 9, 10 and 11 was included in the purchase price.

The defendant, appellant, challenges findings 9, 10 and 11, on the basis that conversations between the plaintiffs and Mr. Bensen and Lang were inadmissible under the parol evidence rule to vary the terms of the deed, and that the lists evidenced by plaintiffs' exhibits 9, 10 and 11 were not competent evidence. It is claimed that pre-execution negotiations merged into the deed. Under the facts presented we do not subscribe to this view.

The facts demonstrate that there is present two separate contracts. We first have the deed, and secondly a separate contract between the plaintiffs and the Northern Realty, Inc., to repair or replace the items contained in Plaintiffs' Exhibits Nos. 9, 10 and 11.

It is well settled in this State that there may be two separate contracts in connection with a particular transaction as long as the contracts are not inconsistent or in conflict with each other. *Pipin* v. *Poitras,* 127 Vt. 307, 309, 248 A.2d 719.

The parol evidence rule applies only where the enforcement of an obligation created by the writing is substantially the cause of action. *Popper* v. *Levy and Franklin,* 125 Vt. 281, 286, 287, 214 A.2d 653. Here, the plaintiff brought suit on the alleged agreement to repair and make good the claimed defects as evidenced by the lists.

Our Court stated in *Roof, Trustee* v. *Jerd,* 102 Vt. 129, 131, 132, "Sure it is, that the rule does not exclude parol proof of a prior or contemporaneous oral contract that is independent of, collateral to, and not inconsistent with the written contract, though it relates to the same general subject-matter and grows out of the same transaction". This rule was restated in *Popper* v. *Levy and Franklin, supra,* page 285.

█ The separate contract to repair, does not in any way affect the deed or impair its force or effect. It merely shows a separate undertaking on the part of appellant, not shown by the deed, but collateral to it and independent of it. The trial court determined, by finding No. 27, that the consideration for the appellant's agreement to repair or replace the items in controversy was included in the purchase price.

The claimed violation of the parol evidence rule cannot be sustained. Plaintiffs' Exhibits Nos. 9, 10 and 11 were properly received in evidence.

Appellant next claims that there is no evidence to support finding No. 26 that the defendant, Northern Realty, Inc., agreed to repair or replace the items in Plaintiffs' Exhibits 9, 10 and 11 as an inducement to the plaintiffs to consummate the purchase and not insist on the escrow account.

In support of the foregoing claim of appellant, it is contended that, in the absence of Mr. Cairns at the closing, no one was present to bind the corporation. We have in mind that a representative of Northern Realty, Inc., was present at the time of the conversations concerning the items to be repaired or replaced, and also the discussion concerning the escrow account proposed by the plaintiffs. By waiving the escrow account, this, of itself, lends credence to plaintiffs' reliance on the appellant to perform the collateral agreement to repair, etc.

Moreover, the transcript reveals that prior to the closing, Mr. Cairns called at the house and stated to the plaintiffs " * * * let him know if we needed anything."

From the facts recited in this opinion the trial court properly determined by finding No. 26 that there was sufficient evidence that Northern Realty, Inc., had knowledge, entered into, acquiesced, ratified and partially performed the contract alleged by the defendants.

Considering all the circumstances, it further appears from the record that plaintiffs were induced to purchase the premises by virtue of appellant's agreement to repair. This phase of finding No. 26 is likewise supported by ample evidence.

■ Finally, appellant urges that there is no evidence to support finding No. 30 that the plaintiffs were damaged to the extent of $2,175.40. This finding reads:

> 30. Total damages to the plaintiffs caused by the failure of the defendant Northern Realty, Inc. to perform its agreement is $2,175.40.

Over objection of the defendants, the court admitted evidence of the cost of repair or corrections of the items listed. Appellant contends that such evidence was not admissible as bearing on the question of damages. It is claimed that the correct measure of damage is not the cost of repair or replacing the items. It is contended by appellant that the true measure of damage is the "* * * difference between the value which the plaintiffs bargained for and the value of what they received."

The evidence reveals that plaintiffs paid $23,500.00 for the property. Mr. Bensen testified that its fair market value was $24,900.00. This evidence is of no help to the appellant, Northern Realty, Inc., in that this action is not predicated on the deed, but upon an independent agreement to make the repairs and replacements evidenced by the three lists received in evidence.

Plaintiffs caused the condition of the premises to be inspected by Kenneth Wagner, Burlington, Vermont, an experienced general contractor. He estimated the cost of work and materials necessary to remedy the condition of the premises at $2,207.90, plus insurance on labor and 10 percent for overhead and profit, a total of $2,565.83.

We hold in this case that the proper measure of damage is the cost of correcting or completing the claimed omissions as claimed by the plaintiffs. *Thomas* v. *Warrenburg*, 92 Kan. 576, 141 P. 255; *Ward* v. *Qualls*, 229 Ky. 622, 17 S.W.2d 739. See, *Pepin* v. *Poitras*, 127 Vt. 307–310; 248 A.2d 719.

There appears no occasion to further burden this opinion by detailing additional evidence on the damage issue. It is suffi-

cient to say that the record amply supports the court's finding No. 30 that plaintiffs have sustained damage of $2,175.40. This finding must stand. *In re James Greenough,* 116 Vt. 277, 284, 75 A.2d 569, *Pepin* v. *Poitras, supra,* 310.

Northern Realty, Inc., has advanced nothing that requires the overturning of the findings or the invalidating of the judgment.

*Judgment affirmed.*