# Hubert H. Hagadorn v. Durgin & Browne, Inc.

[292 A.2d 255]

No. 136-71

Present: Shangraw, C.J., Barney, Keyser, JJ., Larrow and Martin, Supr. JJ.

Opinion Filed June 6, 1972

*Gilbert F. Myers,* Essex Junction, for Plaintiff.

*Ewing & Spokes,* Burlington, for Defendant.

**Keyser, J.** Plaintiff brought suit in general assumpsit (*indebitatus* assumpsit) to collect the sum of $3,000 which he charges was loaned to defendant corporation at the request of its treasurer and secretary, Robert W. Browne. The plaintiff alleges facts in his complaint which he claims constitute an unjust and inequitable enrichment of the defendant. The defendant answered in general denial and defended the action upon the ground that the loan was made to Browne and not to the corporation. Trial was by court whose findings sustained

plaintiff's claim. Judgment was entered accordingly and defendant appealed.

The defendant's plea of general denial put the plaintiff to his proof on the issues thus laid by his complaint and such plea. The question is whether the defendant corporation is liable to the plaintiff on a quasi-contractual obligation grounded upon the unjust and inequitable enrichment of the defendant.

Throughout 1967, the defendant corporation was experiencing financial difficulties and needed operating capital especially to meet its payroll. Because it was unable to secure funds from commercial lending institutions, Browne, as an officer of the corporation, on September 14, 1967, approached plaintiff, a stockholder in the corporation, and asked him for a loan. After some talk the plaintiff and Browne went to the Howard National Bank & Trust Company in Essex Junction where plaintiff withdrew $2,000 cash from his account and handed it to Browne. He immediately redeposited the $2,000 in the corporate checking account in said bank. A day later Browne gave the plaintiff a personal promissory note in the amount of $2,000. On September 26, 1967, Browne, as treasurer of the corporation, issued a check to himself in the amount of $2,000, cashed it and on the same day paid plaintiff the $2,000 in cash. The plaintiff had personal reasons for wanting the transaction on a cash basis. The court below, based upon the statements made by Browne to the plaintiff, found the plaintiff had good reason to believe, and did believe, he was lending the money to the defendant corporation. Furthermore, Browne testified by deposition that "We, the corporation, borrowed the money to meet payroll" and that he received no personal benefit from it. The trial court below also found the $2,000 was used by the defendant corporation to meet its payroll and other operating expenses.

Thereafter, on November 16, 1967, Browne, as treasurer of the corporation, again approached the plaintiff and requested a loan to meet the payroll and other operating expenses of the corporation to be repaid in ten days. At that time Browne informed the plaintiff as to the status of the corporation's accounts receivable, and that the corporation was still unable to secure funds from commercial lending institutions. The plaintiff testified he "loaned the corporation $3,000." He gave Browne $3,000 in cash at his bank and Browne immediately

deposited the money in the corporate checking account in the same bank. This money was utilized solely by the corporation, Browne receiving no personal benefit from it. As in the previous transaction, Browne gave the plaintiff his personal promissory note in the amount of $3,000. The $3,000 loan made upon November 16, 1967, remains unpaid.

The plaintiff testified that he would not have loaned the money to Browne personally, but that he loaned the money to Browne as an officer of the defendant corporation because he deemed it necessary to protect his investment as a stockholder.

Browne testified by deposition that he secured both loans from the plaintiff as an officer of the defendant corporation and for its benefit; also that he and Mr. Durgin, the principal stockholders and officers, agreed to borrow money for operating capital.

■ Because of the manner in which the plaintiff framed his complaint, the $3,000 note was not made the basis of the suit. "Where the declaration is in general assumpsit, it is not based on the special contract, but on defendant's legal liability to pay for the benefits received; but the contract is evidence of the value of the benefits, and his recovery will be remitted to the compensation therein fixed." B. Shipman, Common Law Pleading (3d ed. H. Ballantine 1923) § 59, at 154. Shipman further says at pp. 161–62: "Whenever one person has received money to which another person, in justice and good conscience is entitled, the law creates or implies a promise by the former to pay it to the latter, and an action of assumpsit will lie."

It was not until the cross-examination of the plaintiff by counsel for the defendant that the note was introduced into evidence by the defendant. At that point counsel for the defendant moved to strike certain evidence as being in violation of the parol evidence rule and further for the same reason objected to any evidence which tended to vary the terms of the note. The court denied both the motion and objections.

■ The appellant's first exception is to this ruling contending that it was error since the case substantially concerns the enforcement of an obligation created by the personal promissory note given to the plaintiff by Browne. This

contention is not well founded. Plaintiff's action was brought against Durgin & Browne, Inc., a stranger to the note, not upon the note but upon the theory of unjust enrichment. Under these circumstances, the note was a collateral document to the issue presented by the pleadings.

The law cited by the appellant in support of its claim as to the admission of parol evidence is not in point as it relates to suits between the parties who signed the notes sued upon. This is not the situation here. The basic reason why the parol evidence rule does not apply is stated in 30 Am.Jur.2d *Evidence* § 1031, namely, that "when the writing comes into question collaterally between one of the parties to the writing and a stranger thereto, the parol evidence rule does not preclude either party to the action from introducing parol evidence to vary, contradict, or explain the writing." The theory behind this view is that the stranger is not bound by the rule, and the party should be in the same equitable status.

Defendant's exception to the ruling of the court is without merit.

Defendant's remaining exception is that "The findings of fact are not supported by sufficient evidence and do not reflect a correct application of general principles of corporate law."

Without repeating *verbatim* the critical findings of the court, suffice it to say that the court found the loan of $3,000 made by the plaintiff was not "one to Mr. Browne personally, but on the contrary, was one to the corporation acting by and through Mr. Browne" and that Browne "received no direct personal benefit from the loan." These findings are amply supported by the evidence and other subordinate findings.

The defendant does not dispute the findings, only that the court failed to apply the general principles of corporation and agency law. It argues that if the uncontroverted evidence were considered in light of these principles, a contrary decision should have been reached.

The defendant raises the question that the plaintiff elected to accept Browne's personal note for the loan. It relies upon the law of *In re Koke*, 38 F.2d 232 (9th Cir. 1930), as being unusually similar to the case before us.

The facts in that case show that John Koke owned eighty of the eighty-two shares of the capital stock of the John Koke Company. He borrowed $11,000 from A. R. Demory and used

it to pay debts of the corporation. Koke executed his individual note secured by certain collateral to Demory who elected to accept the note from Koke. Suit was brought on the note against John Koke and judgment recovered. Both Koke and his corporation filed bankruptcy petitions and, upon an order of the referee approving the Demory claim against the corporation, the appeal was prosecuted. The court held there was no cause of action on the note against the corporation, the lender being bound by his election to take Koke's personal note. On these facts, it is clear that the case has no controlling effect on the issues involved here.

The defendant argues that Browne had no authority to transact the loans, and no ratification of the debt by the corporation appears in evidence. It is also argued that the Uniform Commercial Code does not permit liability to be imposed upon the defendant because the defendant's signature does not appear on the instrument.

The defendant cites *Potts* v. *First City Bank*, 7 Cal.App.3d 341, 86 Cal. Rptr. 552 (1970), wherein the court said it was substantially on all fours with the case of *In re Koke, supra*.

In *Potts* the defendant bank refused to make a loan to a corporation but agreed to, and did, make a loan to the two sole stockholders as individuals. The money was used in the operation of a restaurant. The makers of the note defaulted and the bank offset the bank account of the corporation for the sum it was owed on the note. The corporation became bankrupt and the trustee sued the bank to recover the funds for the corporation. The court held the bank had no right of offset as the facts showed a definite intention by the bank not to treat the corporation as being, in any way, a party to the loan. However, the court recognized that although under the Commercial Code a person is not liable on an instrument unless it bears his signature, the Code does not prevent the payee of a note from collecting from a non-signer in a proceeding based on the obligation underlying the note. The court said: "But the fact that the borrower may be personally liable does not necessarily mean that the ultimate beneficiary of the transaction may not also be liable." (86 Cal. Rptr. at 554.)

This is said in Restatement (Second) of Agency § 104 (1957):

"Although there is no ratification, a person on whose account another acts or purports to act may become a party to a transaction similar to the original transaction by manifesting consent, or he may become subject to liability for the value of benefits received as a result of the original transaction."

And under Comment d., Restitution, the following appears:

"A person not subject to liability because of ratification may have received benefits from the act of a purported agent under such circumstances that it is inequitable for him not to pay a third person for their value. The liability in such cases is based upon the fact that the defendant has been enriched at the expense of the plaintiff. In fact, Sections 98 and 99, although phrased in terms of ratification, are based upon the unfairness which would result if the purported principal were not subjected to liability, and a remedy based upon a theory of ratification is given at the election of the other party under the circumstances there stated. In cases in which ratification does not occur, the other party can frequently utilize the restitutional remedy."

There is no evidence in the case at bar to support defendant's claim that the plaintiff elected to accept Browne's personal note for the loan and to look to Browne for repayment. The evidence is to the contrary and amply supports the findings of the court among others, that Browne secured the loans as an officer of the corporation which it was to repay within ten days; that only the corporation utilized the money from the loans; that the plaintiff intended and believed his loans were to the corporation; and that plaintiff would not have loaned the money to Browne personally. The record shows a definite intention of the plaintiff not to treat Browne as being, in any way, a party to the loan. These findings are supported by the evidence and must stand. *Pepin* v. *Poitras*, 127 Vt. 307, 310, 248 A.2d 719 (1968). The judgment below is without error.

*Judgment affirmed.*