## Kenneth S. Martin v. Helen J. Shepard, Admx. of Estate of Harold Shepard (Cooperative Fire Insurance Association of Vermont, Intervenor)

[365 A.2d 971]

No. 332-75

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed October 5, 1976

*Corsones, Hansen & Griffin,* Rutland, for Plaintiff.

*Langrock and Sperry,* Middlebury, for Defendant.

*Charity A. Downs* of *Conley & Foote,* Middlebury, for Intervenor.

**Larrow, J.** The action below was commenced as a civil action, with the plaintiff seeking recovery for personal injuries claimed to have been sustained through the negligence of defendant's decedent in providing improper equipment for use by plaintiff in driving decedent's horse for him in a sulky race. The defendant was substituted as a party upon the death of the original defendant. The appellant here, Cooperative Fire Insurance Association of Vermont (hereinafter termed "Company"), sought and had leave to intervene, asking for a declaration as to whether it was obligated to defend the action

under its Combination Farmowners Policy, admittedly in force at the time of the claimed occurrence. From a trial court determination adverse to it, the Company appeals.

The parties agree that they stipulated the cause might be heard and determined by the presiding judge alone, and no party urges any error in this respect. We are not, therefore, confronted by the problem raised in *Winooski Urban Renewal Agency* v. *Green Mountain Power Corp.*, 134 Vt. 497, 365 A.2d 514 (1976). As that opinion points out, an action for declaratory judgment seeking no equitable relief is legal in nature, requiring findings of fact by the full superior court.

One other procedural difficulty is also presented by the findings below. Although they treat at length and with particularity of the policy provisions and the activities of the defendant additional to ordinary farming, they are silent with respect to the circumstances of the injury sustained. This could well be a fatal defect in the usual declaratory judgment action, and that result is avoided here only because the declaratory judgment is sought by intervention in the original personal injury action. We are thus able to determine from the original complaint the nature of plaintiff's claimed injury and to avoid the need of remand for further findings, since it is the scope of the claim which determines the liability to defend. *Town of South Burlington* v. *American Fidelity Co.*, 125 Vt. 348, 215 A.2d 508 (1965).

We therefore reach the merits of the principal contention presented by this appeal. The issue is a fairly narrow one, and the findings of the trial court, except so far as they are based on judicial notice, are not substantially challenged. The farmowners' policy admittedly in force excluded liability coverage for "business pursuits of an insured" and defined "business" in the words "excludes trade, profession or occupation, other than farming and roadside stands maintained principally for the sale of the insured's produce." The policy contains no express definition of "farming." Plaintiff and defendant contend that the horse racing activities of the decedent, as found by the trial court, are merely incidental to the covered pursuit of farming, and that the trial court was correct in judicially noticing this as a fact of Vermont farm life. We disagree and reverse.

As found by the trial court, the Shepard farm was about 480 acres, on which horses were kept, raised, and entered in competition. They were regularly bought, sold and traded, occasionally for cows. For some 14 months, Mr. Shepard kept up to twenty horses, mostly show horses but some for racing. The race horses were raced over a two month season, at agricultural fairs, and once at the Pownal commercial track. They were kept on the farm during the ten months off season, either at the Shepard farm itself or at the farm of Mr. Martin, the plaintiff, who trained and raced the horses for the decedent. Both men worked at training the horses, and there was equipment for the training at each farm. In the 14 month period, some thirty races were entered.

In addition to the factual findings, the court took judicial notice in its conclusions that:

16. It is almost universally known, at least within the State of Vermont, and is universally known within the farming community in the State of Vermont, that farmers engage in activities which, while not strictly necessary for the basic operation of their farms, are nevertheless complementary to, and therefore an integral part of the whole farming operation.

17. The Court takes judicial notice of the fact that farmers engage in these activities, both for their own recreation and relaxation, and to enhance or maintain their reputation in the farming community as a whole in the areas of animal husbandry, machinery and equipment maintenance, and skill in the use and handling of the various types of equipment. These activities include, but are not limited to, horse drawing, ox drawing, tractor pulling, and the showing of prize animals in various ways, including horse racing. The various activities above related almost invariably take place at the agricultural fairs within the State of Vermont, and almost invariably result in the awarding of a prize, whether cash or merchandise or credits, for the successful competitor.

18. The term "farming" as used in the policy of insurance issued to the defendant, decedent Harold Shepard, and in full force and effect on September 6, 1972, includes the raising, maintenance, training and racing of horses.

As we have previously noted, the injury to plaintiff upon which suit is based is alleged to have occurred at the Vermont State Fair in Rutland on September 6, 1972. The trial court cited no cases for its conclusions.

We cannot agree with the conclusions of the trial court made as a matter of judicial notice. Judicial notice is limited to what a trial court may properly know in its judicial capacity, and it cannot make its individual knowledge, of a fact not generally known, the basis of its action. *Siebert* v. *Siebert,* 124 Vt. 187, 191, 200 A.2d 258 (1964). If there is any doubt whatever either as to the fact itself, or as to its being a matter of common knowledge, evidence should be required. 29 Am.Jur.2d *Evidence* § 24, at 62. Common knowledge of Vermont farm activity would indicate, quite contrary to the conclusions below, that the horse is less and less a part of Vermont farming, that many if not most Vermont farms carry no horses at all, and that horse racing participation by the Vermont farmer is the exception, rather than the rule.

The parties cite a number of cases, most of them clearly distinguishable on their facts from the factual situation here. We are not asked to pass upon coverage or its lack as to incidents occurring on the farm itself in the process of breeding, raising, training, trading or showing of horses. We are not called upon to pass upon the occasional showing of horses off the insured premises or participation in drawing contests, both usually more for the glory of a competitive ribbon rather than for profit. What we are here asked to decide is whether a continued course of racing, off the insured premises, engaged in on a commercial scale, is encompassed within the term "farming," or is a "trade, profession or occupation other than farming." We think it is the latter, and that no other result can be reached under the familiar principles of construction often repeated in our decisions. The interpretation placed upon the policy by the trial court is a strained one, and encompasses a risk not within the contemplation of the parties. We do not read into a contract a term not expressly included unless it arises by necessary implication from the provisions of the instrument. *Dunsmore* v. *Co-op Fire Ins. Association,* 131 Vt. 14, 18, 298 A.2d 853 (1972).

■ The rule of interpretation which governs here is nowhere more concisely put than by then Justice Barney in *State* v. *Glens Falls Ins. Co.*, 132 Vt. 97, 99, 315 A.2d 257 (1974):

> The premiums paid to insurance companies are computed on the basis of the probabilities of occurrences coming to pass that are within the insurance coverage. Since the contracts are the drafting product of the companies, their provisions are, quite rightly, construed most strongly against the company in questionable cases. *American Fidelity* v. *Elkins,* 125 Vt. 313, 315, 215 A.2d 516 (1965). This principle cannot be carried to the point of extending the coverage to make the policy something different than contemplated, however. *Noyes* v. *Commercial Travelers of America,* 125 Vt. 336, 339, 215 A.2d 495 (1965). Where the interpretation urged is not only strained, but would encompass a risk not contemplated by the kind of policy issued nor intended to be undertaken by the company, the insurer is entitled to that fair construction which reflects the understanding of the parties. *Dunsmore* v. *Co-op Fire Ins. Ass'n.,* 131 Vt. 14, 18, 298 A.2d 853 (1972).

The interpretation of the policy requested by plaintiff and defendant would "unjustifiably outrun the risk intended to be insured against." *State* v. *Glens Falls Ins. Co., supra,* 132 Vt. at 101. Whatever the status of horse raising, horse racing involves greatly different risks. The enlargement of the contemplated risk can be clearly seen by envisioning the accident here in question as one in which the horse, instead of breaking and falling, bolted into the spectators.

Because the entry which we make is dictated by the foregoing considerations, we do not reach other claims of error by the intervenor.

*The declaratory judgment entered by the Rutland Superior Court is vacated. Judgment that the intervenor is not obligated by the terms of its policy to appear for or defend the principal defendant in plaintiff's action.*